IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SGF GLOBAL, INC. F/K/A | § | |
| FIRCROFT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4534 |
| | § | |
| HARTFORD CASUALTY INSURANCE CO. | § | |
| and TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

AMENDED MEMORANDUM AND ORDER

The Court's Memorandum and Order entered February 5, 2007 (Document No. 39) is VACATED, and this Amended Memorandum and Order is issued in its place.[1]

Pending is Defendant Hartford Casualty Insurance Co.'s Motion for Summary Judgment (Document No. 29). After carefully considering the motion, response, reply, and the applicable law, the Court concludes as follows:

---

[1]  Hartford moved for partial reconsideration of the Memorandum and Order entered February 5, 2007 (Document No. 40), on the grounds that the Court had not considered arguments raised in its late filed reply (filed only three days before entry of the Order), which had not come to the attention of the Court. After careful study of this submission and Plaintiff's response, the Court has determined that reconsideration of the February 5, 2007, Memorandum & Order is appropriate and this Amended Memorandum & Order should be issued.

I.   Background

This insurance coverage dispute arises from an employee theft/misappropriation policy issued by Defendant Hartford Casualty Insurance Co. ("Hartford") to Plaintiff SGF Global, Inc., f/k/a Fircroft, Inc. ("Plaintiff").  Plaintiff previously had been insured against employee theft under two other policies: (1) from June 8, 2000 to June 8, 2001, by Reliance Insurance Company; and (2) from June 8, 2001 "until cancelled," which date the parties dispute, by Defendant Travelers Casualty and Surety Company of America ("Travelers").  The Travelers policy was an occurrence policy with an additional one-year discovery period.  The Hartford policy, which took effect on June 26, 2002, is a discovery policy covering losses sustained at any time but that are discovered during the policy period.

In the period of October to December 2002, Plaintiff discovered that Todd MacKenzie ("MacKenzie"), a Vice President and General Manager, had been misappropriating company funds for several years.  Plaintiff terminated MacKenzie's employment, filed suit against him on November 7, 2002, and notified Hartford regarding the claim and the suit.  In its proof of loss submitted to Hartford on February 21, 2003, the receipt of which Hartford acknowledged on February 26, 2003, Plaintiff claimed losses from 1999 through 2002 totaling $187,468.19.  Plaintiff also filed a claim with Travelers.

The MacKenzie lawsuit was set for mediation on October 20, 2003, and for trial on October 27, 2003.  In the meantime, Travelers on October 14th allegedly served a complaint on Plaintiff of a suit that it had filed two months earlier in Florida state court seeking declaratory judgment that the Travelers policy did not cover Plaintiff's claim.  Plaintiff then settled the MacKenzie lawsuit for $130,000, and applied $22,631.71 of that sum to its attorney's fees.  Asserting that the settlement violated its contractual right to subrogation, Hartford denied the claim in April, 2004.  Plaintiff filed this lawsuit against Hartford and Travelers seeking damages equal to its remaining loss of $80,099.90 for breach of contract and breach of the duty of good faith under the Texas Insurance Code.  Plaintiff has since settled its claims against Travelers and reduced the damages sought against Hartford to $60,250.00.  Document No. 35 at 2.

Hartford moves for summary judgment, contending that: (1) Plaintiff's claims are not covered under the policy, or, alternatively, that Plaintiff impaired Hartford's right to subrogation and is therefore not entitled to coverage; and (2) Plaintiff cannot sustain its claim under the Texas Insurance Code because it has not alleged or shown an injury independent of policy benefits.

II.   Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c).   The moving party must "demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.   Id.   "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."   Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."   Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).   All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in
this light, could not lead a rational trier of fact to find" for
the nonmovant, then summary judgment is proper.  Kelley v. Price-
Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing
Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the
factfinder could reasonably find in [the nonmovant's] favor, then
summary judgment is improper."  Id.  Even if the standards of Rule
56 are met, a court has discretion to deny a motion for summary
judgment if it believes that "the better course would be to proceed
to a full trial."  Anderson, 106 S. Ct. at 2513.

## III.  Discussion

Hartford contends that the bridge endorsement in its policy
excludes nearly all of Plaintiff's claim.[2]  Document No. 29 at 4-6.
Under Texas law, insurance policies are subject to the same rules
of construction as other contracts.  See Mid-Continent Cas. Co. v.
Swift Energy Co., 206 F.3d 487, 491 (5th Cir. 2000); Forbau v.
Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994).  Unless a

---

[2]   Plaintiff in its response contends that Hartford has
submitted no competent summary judgment evidence because its copies
of the Hartford and Travelers policies and other related documents
lack the required authentication, but Plaintiff has properly
authenticated identical copies of nearly all these documents.
Document No. 31 at ¶¶ 19, 22, 27, 50, 51; exs. A, O, P.  Because
the Court considers the properly authenticated summary judgment
evidence regardless of which party offers it, and Plaintiff's
submissions have effectively cured the alleged defects, Plaintiff's
argument is rejected.  The parties have no actual dispute over the
contents of the policies.

policy term is ambiguous, the court will construe it as a matter of law.  *See* Mid-Continent Cas. Co., 206 F.3d at 491; Am. Mfgs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003).   If, however, the policy language is subject to more than one reasonable interpretation, ambiguity must be resolved in favor of the insured. *See* Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991); *see also* TIG Specialty Ins. Co. v. Pinkmonkey.com Inc., 375 F.3d 365, 373 (5th Cir. 2004)(quoting National Union).

"If the term may be interpreted as a limiting term or the clause itself is an exclusionary clause, then the construction of the clause urged by the insured must be adopted as long as that construction is not unreasonable."  Chen v. Metro. Ins. & Annuity Co., 907 F.2d 566, 569 (5th Cir. 1990); *accord* Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987)(explaining that exclusions are strictly construed against the insurer).  This rule applies, however, only if the provision is actually susceptible to more than one reasonable interpretation.  *See, e.g.*, Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 701 (5th Cir. 1996); Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984) (declining to apply this default rule when the challenged provision was susceptible only to a single construction).  Thus, an unambiguous provision "shall be enforced strictly in accordance with its terms and regardless of the harshness of the fiscal consequences to either the insurer or

insured." Nat'l Union Fire Ins. Co. v. Kasler Corp., 906 F.2d 196,

199 (5th Cir. 1990); *accord* Yancey v. Floyd W. & Co., 755 S.W.2d

914, 918 (Tex. App.--Ft. Worth 1988, writ denied).  "In general, an

insured bears the initial burden of showing that there is coverage

under an insurance policy and the insurer bears the burden of

proving the applicability of an exclusion that permits it to deny

coverage.   Once the insurer proves the applicability of an

exclusion, the burden then shifts back to the insured to

demonstrate that he or she has coverage under an exception to the

exclusion."   Venture Encoding Serv., Inc. v. Atlantic Mut. Ins.

Co., 107 S.W.3d 729, 733 (Tex. App.--Ft. Worth 2003, pet. denied);

*accord* Guaranty Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193

(5th Cir. 1998).

    Hartford's bridge endorsement states, in pertinent part:

    If the Policy to which this endorsement is attached has
    *replaced similar prior insurance* written by a company
    other than us, and such other insurance provided a period
    of time to discover loss occurring prior to the
    termination or cancellation of that coverage, then, the
    OTHER INSURANCE General Condition is amended by adding
    the following:

    3.   If a loss is discovered within the period provided
         by prior insurance to discover losses, we will not
         pay for such loss unless the amount exceeds the
         Limit of Insurance under your prior Policy.   We
         will then only pay for any excess loss subject to
         the Insuring Agreements, Exclusions, and General
         Conditions of this Policy.

Document No. 31 ex. A at 1569 (emphasis added).

Plaintiff contends that the exclusion is inapplicable because the Hartford policy did not "replace[] prior similar insurance" as required by the clause.  This poses two questions: first, whether the Hartford policy and the Travelers Policy provided "similar insurance," and second, whether the Hartford Policy "replaced" the Travelers policy.

A comparison of the two policies readily answers the first question, for both policies of insurance insure against the same risks.  This is implicitly acknowledged by Plaintiff itself, which describes the Travelers Policy (and its predecessor policy issued by Reliance Surety) as "employee theft/misappropriation insurance policies," Document No. 31 at 5, and describes the Hartford Policy as "employee theft/misappropriation insurance."    Id. at 3. Although both policies cover the same risks and are immediately recognized as "similar insurance," Plaintiff argues to the contrary because the Travelers Policy was an "occurrence-based policy" in contrast to the Hartford "discovery-based policy."  This distinction, of course, focuses upon the applicable periods of coverage and when claims must be made rather than on the actual risks for which the insurance is written.   Moreover, what constitutes "similar insurance" must be considered in the context of the bridge endorsement where the term appears, and the term in that context is susceptible to only one reasonable interpretation, namely, insurance that is written to cover the same kind of risks.

Based on the alleged termination of the Travelers Policy on June 8, 2002, Plaintiff also argues that because there was a gap of nearly three weeks between the end of the Travelers Policy and the effective date of the new Hartford Policy, June 26, 2002, that the Hartford Policy did not "replace" the Travelers Policy.  The term "replace" is not defined in the Policy and there is nothing to suggest that the parties intended the word to convey some specialized or peculiar meaning.  In ordinary parlance, the word "replace" means "to take the place of [, especially] as a substitute or successor . . . ."  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, 999 (1990).  A brief temporal gap such as that relied upon by Plaintiff does not alter one's understanding of the word. As will be seen below, however, the uncontroverted summary judgment evidence reflects that Travelers did not send its cancellation notice until June 21, 2002, and the basis for its cancellation precluded cancellation for another 30 days, until July 21, 2002. Thus, with the effective cancellation of the Travelers Policy on July 21, 2002, and the effective date of Hartford's new Policy on June 26, 2002, there was no gap in coverage; to the contrary, there was an overlap.  As a matter of law, the Hartford Policy did replace similar prior insurance written by Travelers.

The Travelers Policy had a one year discovery period after its expiration, which Plaintiff contends occurred on June 8, 2002.  In contrast, Hartford argues that Travelers' notice to its insureds on

9

June 21, 2002, of the retroactive cancellation of the Travelers
Policy was in contravention of the policy clause requiring a 30-day
advance notice of termination.  Thus, Hartford contends that the
Travelers Policy remained in full force and effect until July 21,
2002, 30 days after the notification of cancellation.[3]  Document
No. 38 at 6-11.   Texas law requires strict compliance with
provisions governing notice of cancellation.  *See* Republic W. Ins.
Co. v. Rockmore, No. 3-02-CV-1569-K, 2005 WL 57284, at *5 (N.D.
Tex. Jan. 10, 2005); Jones v. Ray Ins. Agency, 59 S.W.3d 739, 748
(Tex. App.--Corpus Christi 2001, pet. denied); Stroop v. N. County
Mut. Ins. Co., No. 05-97-01517-CV, 2000 WL 33409635, at *5 (Tex.
App.--Dallas Dec. 4, 2000)(invalidating an attempted retroactive
cancellation of a policy that failed to comply with statutory and
contractual notice requirements), *on rehearing*, 2001 WL 881728
(Tex. App.--Dallas Aug. 7, 2001, pet. denied);  Sw. Fire & Cas. Co.
v. Bendel, 321 S.W.2d 183, 186 (Tex. Civ. App.--Dallas 1959, no
writ)(holding "substantial compliance" insufficient under Texas
law, and invalidating notice of cancellation that was improperly

---

[3]  Plaintiff claims that Hartford is not a third party
beneficiary to the Travelers' policy and therefore has no standing
to challenge the validity of Travelers' notice of termination.
Document No. 41 ¶ 4.  No such standing issue is implicated,
however, because Hartford is not prosecuting a claim against
Travelers under the Travelers' policy to which it was not a party;
rather, Hartford seeks to define its own duties under its own
policy, which necessarily requires determination of the effective
period of the predecessor Travelers Policy, and specifically,
determination of the date of its termination.

addressed).   If the notice does not specify an effective date, or is provided within less time than required by the policy, such notice takes effect only upon the expiration of the contractual notice period.[4]  *See* <u>Brewer v. Md. Cas. Co.</u>, 245 S.W.2d 532, 534 (Tex. Civ. App.--San Antonio 1952, writ ref'd n.r.e.)("A notice of cancellation effective at an earlier date than permitted by a policy would be controlled by the policy . . . ."); <u>Frontier-Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co.</u>, 166 S.W.2d 746, 747 (Tex. Civ. App.--Fort Worth 1942, no writ); <u>California-Western States Life Ins. Co. v. Williams</u>, 120 S.W.2d 844, 846 (Tex. Civ. App.--El Paso 1938, writ dism'd)(explaining a notice that the policy "is hereby cancelled" would take effect five days after receipt of such notice, as provided by contract).

The Travelers Policy did not specify a termination date, but instead continued "[u]ntil [c]ancelled[.]"  Document No. 31 ex. P at 1585.  Under the policy, if Travelers cancelled the policy for any reason other than non-payment of premiums, it was required to mail or deliver to Plaintiff written notice of cancellation at least "30 days before the effective date of cancellation . . . ." <u>Id.</u> ex. P at 1595.  Instead, Travelers' notice dated June 21, 2002

---

[4] Although the insured under most circumstances may waive these requirements, *see, e.g.*, <u>Argonaut Sw. Ins. Co. v. Amco Mesh & Wire Co.</u>, 472 S.W.2d 843, 847 (Tex. Civ. App.--Dallas 1971, writ ref'd n.r.e.); <u>In re Sensitive Care, Inc.</u>, 256 B.R. 585, 588-89 (Bankr. N.D. Tex. 2000)(holding the insurance company waived objection to the trustee's retroactive cancellation of a policy), no such waiver is alleged by Plaintiff.

purported to cancel the policy effective June 8, 2002, for
"[f]ailure to provide underwriting information[.]" Id. ex. Q.  The
notice of cancellation therefore failed to provide the requisite
30-day advance notice, and in fact, improperly attempted to effect
a *retroactive* cancellation of the policy.   Accordingly, the
Travelers Policy remained in force until the expiration of the 30-
day contractual notice period following the June 21 notice, namely,
until July 21, 2002, and its discovery period ended one year later,
on July 21, 2003.

     Plaintiff discovered its loss within Travelers's one-year
discovery period, in the time frame of October to December, 2002.
The Hartford Policy's bridge endorsement excludes primary coverage
for Plaintiff's losses that occurred during the term of the
Travelers Policy (June 8, 2001-July 21, 2002) that were discovered
by Plaintiff within one year after July 21, 2002.  With respect to
those losses, Hartford's status is only as an excess insurer to
Travelers--that is, liable only when Travelers has paid up to its
policy limits.  *See* St. Paul Mercury Ins. Co. v. Lexington Ins.
Co., 78 F.3d 202, 206 (5th Cir. 1996) (describing an excess
insurer's liability as limited to "coverage after another insurer
has paid up to its policy limits"); Union Indem. Ins. Co. of N.Y.
v. Certain Underwriters at Lloyd's, 614 F. Supp. 1015, 1016 (S.D.
Tex. 1985).  Stated differently, Hartford has no liability for
losses during this period for which Travelers refuses coverage.

However, with respect to losses that occurred after July 21, 2002, and discovered during the effective period of the Hartford Policy, the Hartford Policy provides primary coverage.

The summary judgment evidence establishes genuine issues of material fact on Plaintiff's remaining claims against Hartford, namely, for breach of contract with respect to liability on the Hartford Policy for covered losses that occurred after July 21, 2002, Hartford's alleged failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the MacKenzie claim after Hartford's liability for at least a portion thereof became reasonably clear, including whether Plaintiff suffered extra-contractual damages, such as for any portion of the attorney's fees incurred by Plaintiff in the MacKenzie suit, all of which is inextricably intertwined with Hartford's contention that Plaintiff violated the Hartford Policy and wrongfully impeded Hartford's right of subrogation.

## IV.  Order

It is therefore ORDERED that Defendant Hartford Casualty Insurance Company's Motion for Summary Judgment (Document No. 29) is GRANTED IN PART, and it is ADJUDGED that Hartford has no liability under the Hartford Policy for Plaintiff's theft/misappropriation losses that occurred in the period from June 8, 2001, through July 21, 2002, which were discovered by Plaintiff

13

within one year after July 21, 2002, except to the extent, if applicable, that such covered losses exceed the limits of insurance under Plaintiff's Travelers Policy; and Hartford's Motion for Summary Judgment is otherwise DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 27th day of February, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE